IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

SHRODDRIC DURELL MITCHELL                                          PLAINTIFF

v.                          Civil No. 4:09-cv-04071

CHARLES NEFF, Administrator,
Miller County Detention Center; and
MAJOR GARY TURNER, Miller
County Detention Center                                            DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Shroddric Durell Mitchell (hereinafter Mitchell), filed this civil rights action pursuant to the provisions of 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis.* Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2009), the Honorable Jimm Larry Hendren, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

Mitchell is currently incarcerated at the Arkansas Department of Correction (ADC). The events at issue in this case occurred while he was incarcerated at the Miller County Detention Center (MCDC). Specifically, Mitchell maintains the Defendants failed to protect him from attack by fellow inmates.

Defendants filed a motion for partial summary judgment (ECF No. 27). In an effort to assist the Mitchell in responding to this motion, I propounded a questionnaire (ECF No. 32). Mitchell filed a timely response (ECF No. 33) to the questionnaire. The motion is now ready for decision.

### I. BACKGROUND

Mitchell was incarcerated at the MCDC from December 1, 2008, to August 17, 2009. *Plaintiff's Response* (ECF No. 33)(hereinafter *Resp.*) at ¶ 1. He was incarcerated because of pending criminal charges. *Id.* at ¶ 2.

At approximately 1:00 to 2:00 a.m. on January 16, 2009, Mitchell maintains he was attacked by five inmates, Krashun Nard, Brian Devis, Lee Smith, Janerio Dillihurt, and Roy Vaughn, and beaten with a metal pipe and lunch trays. *Resp.* at ¶¶ 3 & 11. He was housed in maximum B-pod at the time, which he describes as an open dorm. *Id.* at ¶¶ 3 & 9(C). The attack occurred inside the pod. *Id.* at ¶ 3. Before the attack, Mitchell had no problems with the inmates involved in the attack and had not been threatened by them. *Id.* at ¶¶ 3 & 7(B). Prior to the attack, Mitchell never felt he was in danger and had no specific reason to believe he would be attacked. *Id.* at ¶¶ 3 & 13.

However, he indicates these same inmates had attacked inmates in other pods. *Resp.* at ¶ 7(A). He indicates the five inmates had attacked inmates who paid to receive tobacco products, who they felt were fearful, who violated their personal space, and those who refused to share their narcotics or cell phones. *Id.*

According to Mitchell, the inmates involved felt the "need to take control" of the MCDC. *Resp.* at ¶ 3. Mitchell maintains the inmates involved "in fact had the detention center personnel on the payroll." *Id.* Mitchell was accused of stealing one of the attacker's cell phone's sim card. *Id.* Mitchell believes the inmates felt they were "untouchable." *Id.* He also believes the attack was to "control the narcotics" that were being brought into the jail. *Id.*

According to Mitchell, no officer came to assist him because there was no working camera or a working panic button. *Resp.* at ¶ 4. At the time of the attack, Sergeant Carolyn Ballard and one other male officer were on duty. *Id.* Mitchell cannot recall the male officer's name. *Id.* Mitchell states he ran up and down the stairs, into the bathroom, and into his bed in an effort to escape his attackers. *Id.* If the camera had been working, he maintains he would have been in the view of the camera which was mounted on the top of the wall on the far left as you walked into the pod. *Id.* He indicates other inmates told him the camera was not working and he noticed some

wires cut from the camera.  *Id.*  Mitchell indicates the panic button was not working because he witnessed an inmate removing the "motor" from the button to be used to make a tattoo gun.  *Id*.

At the time of the attack, Mitchell states the officers on duty were at the officers' post.  *Resp.* at ¶¶ 4 & 9(C).  Although the post was only four or five steps away, Mitchell maintains it is at the front of the jail out of view.  *Id.*  Mitchell asserts that officers did not make regular rounds.  *Id.*  On the night in question, the last time an officer was in the pod, according to Mitchell, was at 8:00 p.m. for mail call.  *Id.* at ¶ 9(C).  Mitchell indicates the jail was "short handed on officers."  *Id.*  He maintains the attack lasted forty-five minutes to an hour.  *Id.* at ¶¶ 4 & 9(D).  Mitchell knew the approximate time of the attack lasted because when it started a show called "The Deal" had just come on the television.  *Id.* at ¶ 9(D).

According to Mitchell, the only reason an officer showed up was because a female called the jail to report the attack.  *Resp.* at ¶ 9(D).  He indicates an inmate in Max A-pod was on his cell phone when the attack started and told his girlfriend who then called the jail.  *Id.*

Mitchell was seen at the emergency room and diagnosed as having a contusion.  *Resp.* at ¶ 10.  He was told to put an ice pack on the area and take Ibuprofen.  *Id.*  Mitchell indicates he suffered bruises to his back, arms, and face and had knots on the top of his head and hand.  *Id.* at ¶ 11.  Mitchell states he received a pain pill and his head was wrapped.  *Id.*  It took approximately a week for the swelling to go down.  *Id.*  He maintains he still has pain from the injuries to his head to this day.  *Id.*

Mitchell maintains Charles Neff and Major Gary Turner made the decision not to file criminal charges against any of the inmates.  *Resp.* at ¶ 6.  Neither Neff not Turner were at the jail when the attack occurred.  *Id.* at ¶ 8.  However, Turner maintains the cameras in the jail were

working and Mitchell's cell was being monitored on the night of the incident. *Defendants' Exhibit* (hereinafter *Defts' Ex.*) C at ¶ 4. According to Turner, Mitchell's cell was only four or five steps from the officers' viewing area. *Id.* at ¶ 5. While he does not know how long it took an officer to arrive on the scene, Turner asserts that it could not have been more than five minutes. *Id.*

Mitchell maintains Neff and Turner were in charge of inmate safety and any incidents had to be reported to them in writing on either a request or a grievance form. *Id.* at ¶ 7. A few weeks after the attack, Mitchell states he was called into the office by Neff and Turner. *Id.* at ¶ 7. Mitchell indicated he wanted to press charges against the five inmates. *Id.* Although Neff and Turner indicated further action would be taken, Mitchell states nothing was ever done. *Id.*

According to Turner, he did his best to "protect Mitchell from other inmates while he was incarcerated at the Miller County Detention Center, but it was difficult because Mitchell was constantly agitating other inmates and trying to act like he ran the jail." *Defts' Ex.* C at ¶ 6. Mitchell denies he agitated others and states he had only been at the jail a few weeks when this occurred. *Resp.* at ¶ 9(F). Mitchell indicates he was having some emotional problems as a result of being locked up, being away from his family, and knowing he was facing jail time. *Id.*

Turner asserts that the inmates who attacked Mitchell were put on lock-down and shipped out to the Clark County Jail within a few days of the incident. *Defts' Ex.* C at ¶ 7. According to Mitchell, the inmates were still at the MCDC weeks after the attack. *Resp.* at ¶ 12. Mitchell states some of the inmates were moved to "other maximum cells and still proceed[ed] in other attack[s] on inmates." *Id.* Others he states were given trustee status and allowed to work in the kitchen. *Id.* According to Mitchell, it was not until after they attacked another inmate, that the inmates were moved to Clark County Jail. *Id.*

3

When asked what Neff and Turner could have done to protect Mitchell or other inmates from attack, Mitchell replied they should have made sure: more officers worked all shifts; the cameras were in working order; regular jail checks occurred every thirty minutes; and inmates who were known trouble makers or had known violent propensities should have been separated. *Resp.* at ¶ 13.

## II.  APPLICABLE STANDARD

"Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  We view all evidence and inferences in a light most favorable to the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  However, the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial.  *See Celotex v. Catrett*, 477 U.S. 317, 324 (1986).

## III.  ARGUMENTS OF THE PARTIES

Defendants point out that they were not present at the time of the attack.  To the extent, Mitchell claims his rights were violated by the fact that charges were not filed against the inmates who attacked them, Defendants argue no claim of constitutional dimension is stated.  Next, they maintain there is no evidence of deliberate indifference on the part of detention center employees.  They note Mitchell concedes he had not been threatened in anyway by the five inmates prior to the attack and did not feel like he was in danger.  Defendants also argue that there is no suggestion in the evidence of any custom or policy of Miller County which resulted in a violation of Mitchell's rights.

In opposition, Mitchell asserts the same five inmates had been involved in other attacks on

inmates both before and after the attack on him. He maintains there was an ongoing power struggle between inmates, a shortage of staff, a failure to make regular jail checks, and the presence of articles inmates were prone to fight over including cell phones, drugs, and tobacco products. In short, while he did not know in particular that he was in danger, Mitchell asserts the environment was unsafe.

## IV. DISCUSSION

Due process "'protects pretrial detainees both from deliberate exposure to violence and from failure to protect when prison officials learn of a strong likelihood that a prisoner will be assaulted.'" *Anderson v. Gutschenritter*, 836 F.2d 346, 349 (7th Cir. 1988)(*quoting Matzker v. Herr*, 748 F.2d 1142, 1150 (7th Cir. 1984)). Similarly, the Eighth Amendment imposes a duty on the part of prison officials to protect convicted prisoners from violence at the hands of other prisoners. *See e.g., Perkins v. Grimes*, 161 F.3d 1127, 1129 (8th Cir. 1998). In addressing failure to protect claims brought by pretrial detainees, the Eighth Circuit Court of Appeals has noted that pretrial detainees are entitled to at least as much protection as a convicted inmate and has applied Eighth Amendment analysis to claims brought both by pretrial detainees and convicted prisoners. *See Perkins*, 161 F.3d at 1129- 1130. *See also Crow v. Montgomery*, 403 F.3d 598, 600 (8th Cir. 2005)(analyzing a pretrial detainee's failure to protect claim under the same Eighth Amendment analysis used for similar claims brought by convicted prisoners); *Thomas v. Booker*, 784 F.2d 299 (8th Cir. 1986)(same).

In *Riley v. Olk-Long*, 282 F.3d 592 (8th Cir. 2002), the court stated:

An Eighth Amendment claim for failure to protect is comprised of two elements. First, an "inmate must show that [he] is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).

5

> Second, the inmate must establish that the defendant prison official recklessly disregarded that risk. *Jackson v. Everett,* 140 F.3d 1149, 1151 (8th Cir. 1998). "For the purposes of failure to protect claims, it does not matter ... whether a prisoner faces an excessive risk of attack for reasons personal to [him] or because all prisoners in [his] situation face such a risk." *Hott v. Hennepin County, Minn.,* 260 F.3d 901, 906 (8th Cir. 2001) (internal quotations omitted). The question is whether a prison official has a "sufficiently culpable state of mind," meaning that [he] is deliberately indifferent to an inmate's safety. *Farmer,* 511 U.S. at 834 (internal quotation omitted). The prison official's state of mind is measured by a subjective, rather than an objective, standard. *Id.* at 838-39; *see also Jackson,* 140 F.3d at 1152 ("[D]eliberate indifference must be viewed from [defendant's] perspective at the time in question, not with hindsight's perfect vision."). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [he] must also draw the inference." *Farmer,* 511 U.S. at 837.

*Riley,* 282 F.3d at 595. *See also Krein v. Norris*, 309 F.3d 487 (8th Cir. 2002)

Thus, to prevail on his failure to protect claim, Mitchell must show: (1) he was incarcerated under conditions posing a substantial risk of serious harm; and (2) the Defendants recklessly disregarded the risk. *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003).

In this case, I believe there are genuine issues of fact that preclude summary judgment in Defendants' favor. Mitchell maintains the same five inmates who attacked him were involved in a number of other inmate attacks before they attacked him. He states there was an ongoing power struggle at the jail over various types of contraband. He also asserts that the jail was short handed and regular jail checks were not conducted.

The materials submitted by Defendants do not address the other attacks that were alleged to have occurred, whether the facility was shorthanded on staff, whether there was ongoing power struggle between inmates, or the presence of cell phones, drugs, tobacco, etc. in the jail. Defendants have presented no incident reports or other documentation created by those who responded to the

attack, including, according to Mitchell, Arkansas State Police Officers.

To the extent Mitchell brings a claim based on Defendants failure to file criminal charges against the five inmates involved in the attack, the claim fails as a matter of law. A private citizen has no right to institute criminal prosecution. *See Diamond v. Charles,* 476 U.S. 54, 64-65 (1986); *In re Kaminski,* 960 F.2d 1062, 1064 (D.C. Cir. 1992) (private party lacks judicially cognizable interest in prosecution of another person); *Lopez v. Robinson,* 914 F.2d 486, 494 (4th Cir. 1990); *Cok v. Cosentino,* 876 F.2d 1, 2 (1st Cir. 1989).

## V.  CONCLUSION

For the reasons stated, I recommend that the Defendants' motion for summary judgment (ECF No. 27) be granted in part and denied in part. Specifically, I recommend the motion be granted as to Mitchell's claims stemming from a failure on the part of the Defendants to bring criminal charges against the inmates who attacked him. In all other respects, I recommend the motion be denied.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 18th day of February 2011.**

/s/ Barry A. Bryant
**HON. BARRY A. BRYANT**
**UNITED STATES MAGISTRATE JUDGE**